**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEFAN BATCHELOR** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-1340** |
| | : | |
| **SECRETARY GEORGE LITTLE,** | : | |
| **FORMER SECRETARY JOHN** | : | |
| **WETZEL** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                      **November 7, 2022**

An incarcerated man *pro se* sues the former and acting Secretaries of the Pennsylvania Department of Corrections under the Eighth Amendment alleging they denied him "the most basic of human needs" including sleep, mental health resources, social interactions, environmental stimulations, and exercise when they placed him in "solitary confinement" on the Restricted Release List. He also argues the former and acting Secretaries deprived him of procedural due process by placing and keeping him confined in the Intensive Management Unit. But the man fails to offer evidence his confinement created a substantial risk of harm or the former and acting Secretaries acted with deliberate indifference by placing him on the Restricted Release List. The man instead admits he has no trouble sleeping, talks to his siblings every other day, has access to mental health resources if needed, and exercises two hours every day. The undisputed evidence shows the former Secretary placed the incarcerated man on the Restricted Release List four years ago because of his misconduct while housed in the general population unit and he remains on the Restricted Release List because of his continuous and recent misconduct. The man received adequate due process when placed on the Restricted Release List and continues to receive the process due through periodic reviews of his status. We lack genuine issues of material fact and must enter summary judgment in favor of the former and acting Secretaries.

I.     **Undisputed Material Facts**[1]

Twenty-nine-year-old Stefan Batchelor is currently serving a sentence for drug related charges and assault under the custody of the Pennsylvania Department of Corrections at SCI Phoenix.[2] He began serving his sentence on November 6, 2015.[3] Mr. Batchelor attacked other inmates, destroyed personal property, and threatened staff while serving his sentence.[4] The Facility has imposed thirty-two misconducts on Mr. Batchelor including seven for assault, four for threatening employees, and others for fighting, indecent exposure, and sexual harassment.[5]

*The Facility decides to place Mr. Batchelor on the Restricted Release List.*

Mr. Batchelor assaulted a staff member in March 2018 leading to the Facility placing him on the Restricted Release List.[6] The Restricted Release List imposes certain conditions on Mr. Batchelor's rights inside the Facility.[7] Criteria for placing an incarcerated citizen on the Restricted Release List includes, among other things, whether an individual has a history of assaulting staff and inmates and whether the individual poses a threat to the orderly operations of the Facility.[8] Placement on the Restricted Release list may lead to housing in a different unit.[9]

*The Facility places Mr. Batchelor in the Intensive Management Unit.*

Mr. Batchelor's placement on the Restricted Release List led to his housing in the Intensive Management Unit.[10] The Intensive Management Unit is a six phase program designed to bring Mr. Batchelor back into general population housing.[11] Each phase takes nine months to complete. Mr. Batchelor will restart the phase if he fails to complete a phase.[12] Mr. Batchelor started in phase four and remains in phase four today.[13] Mr. Batchelor's cell in the Intensive Management Unit is seven feet by twelve feet with small windows.[14]

Mr. Batchelor's out-of-cell hours are more limited than if he were housed with the general population or if he advanced to phase one, two, or three in the Intensive Management Unit.[15] Mr.

Batchelor is given two hours of exercise per day, three phone calls a week, use of tablets and kiosks three times a week, four showers a week, and a forty-five minute video visit a week while in phase four.[16] Mr. Batchelor talks to his siblings on the phone for fifteen minutes every other day, psychology staff once a week, a Psychological Services Specialist twice a week, and his counselor once a week.[17] Mr. Batchelor is not permitted contact visits from family members or clergy.[18] Mr. Batchelor has access to television, the commissary, and his property.[19]

### *Policies for placement on the Restricted Release List.*

The Pennsylvania Department of Corrections issued two policies affecting Mr. Batchelor while he is on the Restricted Release List.[20] The Administrative Custody Procedure in effect from November 2016 through April 18, 2022, provides the Department's Secretary must approve placement of an individual on the Restricted Release List.[21] Secretary John E. Wetzel signed this policy and served as Secretary from 2011 until October 2021.[22] Former Secretary Wetzel, under this policy, decided to place Mr. Batchelor on the Restricted Release List and, if appropriate, could transfer him back into the general population.[23] Secretary Wetzel acknowledges he placed Mr. Batchelor on the Restricted Release List in 2018, and continued approving Mr. Batchelor's placement on the Restricted Release List until his retirement in October 2021.[24] Acting Secretary George Little replaced former Secretary Wetzel in October 2021 and continues to serve as acting Secretary today.[25]

Secretary Little signed a new policy on April 18, 2022 regarding placement on the Restricted Release List.[26] It now provides the Department's Executive Deputy Secretary for Institutional Operations must approve an incarcerated citizen's placement on the Restricted Release List.[27] Secretary Little claims he never had any involvement in Mr. Batchelor's placement on the Restricted Release List because of this change in the policy.[28]

*Review of Mr. Batchelor's placement on the Restricted Release List.*

The Department's Program Review Committee is assigned to meet with Mr. Batchelor at least every ninety days and review his Restricted Release List placement.[29] Mr. Batchelor met with the Program Review Committee and the Committee has consistently recommended keeping Mr. Batchelor on the Restricted Release List.[30]

The Department also annually reviews Mr. Batchelor's Restricted Release status.[31] The April 2016 policy required the Secretary "make the final determination regarding the inmate's placement on the Restrict Release List."[32] The April 2022 policy now provides "the [Executive Deputy Secretary for Institutional Operations] will make the final decision regarding an inmate's status on [the Restricted Release List]" at the annual review.[33] The annual review must include a psychological evaluation completed within six months of the review.[34] Mr. Batchelor's annual reviews under the 2016 policy all occurred before acting Secretary Little replaced former Secretary Wetzel.[35]

*Mr. Batchelor's grievances and complaints about the Restricted Release List.*

Mr. Batchelor wrote to Secretary Little on March 9, 2022 about his continued placement on the Restricted Release List.[36] He described how being on the Restricted Release List has affected his mental health and he cannot focus due to "excessive loud noise, banging, yelling, uncontrollable behavior, problems sleeping, [and him] not being able to see out [his] cell window."[37] He wrote he has contemplated suicide and has "outrageous thoughts" and asked whether the Secretary could "come up with some kind of solution for [him][.]"[38] Staff Assistant Keith Miller responded on March 30, 2022 on behalf of Secretary Little and informed Mr. Batchelor he could not be removed from the Restricted Release List without review and approval of the Secretary/designee (at the time Secretary Little).[39] He encouraged Mr. Batchelor to continue

communicating his concerns to the Program Review Committee and Unit Management Team during his regular reviews.[40]

Mr. Batchelor again wrote to Secretary Little on April 11, 2022 requesting to be released from "solitary confinement."[41] Mr. Batchelor informed Secretary Little the unit he resides in "really disturbs [his] mental health" because of the constant yelling and banging which makes it hard for Mr. Batchelor to focus and sleep.[42] Staff Assistant Miller responded on April 20, 2022 informing Mr. Batchelor the Department could not remove him from the Restricted Release List without review and approval of the Executive Deputy Secretary and again encouraged Mr. Batchelor to continue communicating his concerns to the Program Review Committee during his regular reviews.[43]

### *Mr. Batchelor's 2022 Restricted Release List annual review.*

The Executive Deputy Secretary approved Mr. Batchelor's continued placement on the Restricted Release List in July 2022 following his annual review.[44] The annual review report noted Mr. Batchelor last assaulted another inmate in January 2022 and he needed to remain on the Restricted Release List due to his "recent misconduct for fighting."[45]

Mr. Batchelor's annual review also included a March 10, 2022 psychological evaluation.[46] The evaluation showed Mr. Batchelor carried a mental health stability rating of "B" meaning he has a history of mental health history but currently requires no mental health services.[47]

## II.   Mr. Batchelor's allegations and evidence adduced in discovery.

Mr. Batchelor sued acting Secretary Little and former Secretary Wetzel in April 2022 alleging they violated his Eighth Amendment rights by placing him on the Restricted Release List.[48] Mr. Batchelor alleges the Secretaries are violating his Eighth Amendment rights by directing he be held in "solitary confinement."[49] He claims the conditions of his solitary confinement deny him access to basic human rights including: sleep, mental health resources,

social interactions, environmental stimulation, and exercise.[50] He claims "[a]s a result of spending over four years in solitary confinement, [he] has experience[d] acute mental anguish, short-term memory loss, increased stress, severe anxiety, and other psychological injuries" and he "is likely to experience all of [these] harms and debilitating psychological impairments for the rest of his life[.]"[51]

Mr. Batchelor contends he spends "practically all of his time alone in his cell," and when he is allowed out he spends time "undergoing strip searches, showering alone in a stall, or being locked alone in a small outdoor cage[.]"[52] He also alleges his cell is illuminated by artificial lights, twenty-four hours a day and the lights combined with the constant "yelling, screaming, [and] banging" in his unit and the constant checks from corrections officers cause him to experience "extreme sleep disorder and disruption" getting "an average of three to four hours of sleep per night[.]"[53] Mr. Batchelor also claims for the past four years his cell in the Intensive Management Unit is colder than those in the general prison population which make his sleeping conditions even worse.[54] Mr. Batchelor contends since being placed on the Restricted Release List he is prohibited from participating in organized activities and educational programs, having contact visits with clergy and family, and is subjected to strip searches and must be shackled every time he leaves his cell.[55]

Mr. Batchelor also alleges the acting and former Secretaries deprived him of his due process rights under the Fourteenth Amendment by denying him a meaningful opportunity to challenge his confinement.[56] He claims he is entitled to due process for his placement on the Restricted Release List "including an opportunity to be heard by the decision-maker, the Secretary[.]"[57]

### *Mr. Batchelor undergoes a psychiatric evaluation.*

Dr. Pogos Voskanian performed a psychiatric evaluation of Mr. Batchelor on August 9, 2022 as part of the discovery in this case.[58] Dr. Voskanian also reviewed Mr. Batchelor's correctional, medical, and mental health related records.[59] Dr. Voskanian, in his psychiatric evaluation of Mr. Batchelor, recognized Mr. Batchelor's current psychiatric diagnoses include anti-social personality disorder and substance dependence and previous diagnoses include anxiety and depression.[60]

Dr. Voskanian opined Mr. Batchelor's complaints of feeling anxious or depressed cannot be correlated with his placement in the Intensive Management Unit.[61] Dr. Voskanian acknowledged Mr. Batchelor feigned mental illnesses, including attempting suicide, in the past to manipulate others.[62]

### *Mr. Batchelor testifies about his experience in the Intensive Management Unit.*

Mr. Batchelor testified while in the Intensive Management Unit he is generally calm but anxious to go home.[63] Mr. Batchelor has not had any recent suicidal thoughts and is not stressed or fearful while on the Restricted Release List.[64] He explained he received a mental health diagnosis for anxiety and depression as a teenager.[65] Mr. Batchelor admitted he stopped taking his prescribed medication over a year-and-a-half ago and refused appointments with psychology staff "a few times" since being placed in the Intensive Management Unit because "[he] wasn't in a talkative mood."[66]

Mr. Batchelor also swore he does not have trouble sleeping now and is able to concentrate.[67] But he explained the lights in his cell remain on from 6:00 a.m. until 9:00 p.m., which interferes with his ability to take naps during the day.[68] Mr. Batchelor clarified because his cell door is sealed off he can only hear his cell mates if they shout, yell, or kick.[69]

III.    **Analysis**

Acting Secretary Little and former Secretary Wetzel move for summary judgment on Mr. Batchelor's Eighth Amendment and procedural due process claims.[70] They argue: (1) Mr. Batchelor cannot establish the personal involvement of acting Secretary Little sufficient to hold him individually liable; (2) there is no evidence the facility's conditions fell below the constitutional standard; (3) there is no evidence the procedure leading to placement on the Restricted Release List fell below the constitutional standard; and (4) acting Secretary Little and former Secretary Wetzel are entitled to qualified immunity.[71] Mr. Batchelor failed to respond.

A.    **We find a genuine issue of material fact regarding Secretary Little's personal involvement.**

Mr. Batchelor alleges acting Secretary Little and former Secretary Wetzel "exhibited extreme deliberate inference to [his] health and well[-]being" by keeping him in "solitary confinement."[72] Mr. Batchelor also alleges Secretaries Wetzel and Little "promulgated, approved, implemented and enforced a policy which required [Restricted Release List] prisoners to remain in solitary until the Secretary approved them to be released . . . back to the general population" without adequate due process which has led to Mr. Batchelor's continued placement on the Restricted Release List.[73]

Secretary Little asks we grant judgment in his favor because he had no personal involvement in placing or keeping Mr. Batchelor on the Restricted Release List.[74] We find a factfinder could conclude Secretary Little had the ability to remove Mr. Batchelor from the Restricted Release List before Secretary Little signed the April 2022 Restricted Release List policy and Secretary Little personally endorsed the April 2022 policy.

Congress in section 1983 allows a person to sue a government official if the government official violates a person's constitutional rights.[75] There can be no individual liability unless there

is personal involvement in the alleged constitutional wrongs.[76] Acting Secretary Little "must have personal involvement in the alleged wrongs" to be liable.[77] Acting Secretary Little "cannot be held responsible for a constitutional violation which he . . . neither participated in nor approved."[78] "A supervisor can be held liable, but only where 'he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.'"[79] "Supervisory officers" such as Secretary Little "cannot be held liable for every illegal act that takes place [at a facility]" and "can be held liable only for [his] own conduct."[80] But "supervisors can be liable if they established and maintained a policy, practice or custom which directly caused [the] constitutional harm."[81]

Secretary Little currently serves as the acting Secretary of the Pennsylvania Department of Corrections.[82] There is no evidence Secretary Little had involvement in Mr. Batchelor's initial placement or his continued placement on the Restricted Release List up until October 2021. Former Secretary Wetzel instead concedes he decided to place Mr. Batchelor on the Restricted Release List initially in March 2018 and continued to place Mr. Batchelor on the Restricted Release List until October 2021 when he retired.[83] Secretary Little then took over as acting Secretary beginning in October 2021.

But from October 2021 through April 18, 2022 – before Secretary Little signed the April 2022 policy into effect – there is a genuine dispute of material fact based on Staff Assistant Miller's letter whether Secretary Little could remove Mr. Batchelor from the Restricted Release List. Mr. Batchelor wrote to Secretary Little on March 9, 2022 about his continued placement on the Restricted Release List.[84] Staff Assistant Miller responded on March 30, 2022 and informed Mr. Batchelor he could not be removed from the Restricted Release List without review and approval of the Secretary/designee (at the time Secretary Little).[85]

There are also material issues of fact regarding whether Secretary Little is liable as a policymaker for establishing and maintaining the April 2022 policy regarding the placement of Mr. Batchelor on the Restricted Release List. Secretary Little is not entitled to judgment as a matter of law regarding whether he is potentially liable for Mr. Batchelor's Eighth Amendment and procedural due process claims based solely on his personal involvement because his personal involvement has not been fully developed.

**B.** **We grant summary judgment dismissing Mr. Batchelor's Eighth Amendment claim.**

Mr. Batchelor alleges Secretaries Wetzel and Little violated his Eighth Amendment rights. He must now, in response to their motion for summary judgment, adduce some evidence: (1) the alleged constitutional deprivation "must be, objectively, sufficiently serious, resulting in the denial of the minimal civilized measure of life's necessities" and (2) the "prison official has a sufficiently culpable state of mind, *i.e.*, deliberate indifference to the inmate's health or safety."[86]

To satisfy the first element, the objective prong, Mr. Batchelor must show "he is incarcerated under conditions posing a substantial risk of serious harm."[87] The proof necessary to show "a substantial risk of harm" is less demanding than the proof needed to show "a probable risk of harm."[88] "[M]ere placement in [administrative custody], on the [Restricted Release List], does not violate the Eighth Amendment."[89] So, Mr. Batchelor must show the Secretaries deprived him of "the minimal civilized measure of life's necessities[,]" which is a difficult standard to meet.[90] This is a totality of the circumstances analysis.[91] Mr. Batchelor can satisfy this requirement by showing either Secretaries Wetzel or Little deprived him of "a single, identifiable human need," such as food, water, shelter, clothing, or exercise, or prison conditions "pose an unreasonable risk of serious damage" to his current or future health.[92]

The second element, the subjective prong, requires deliberate indifference.[93] "An official

is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety."[94] The element of deliberate indifference "is subjective, not objective . . . meaning [] the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."[95] "In other words, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[96] We may also consider whether Secretaries Wetzel and Little "had a legitimate penological purpose" behind their conduct when evaluating the subjective prong.[97] This is because "[t]he Eighth Amendment prohibits punishments without penological justification."[98]

Our Court of Appeals in *Porter v. Pennsylvania Department of Corrections* held Mr. Porter, an incarcerated man, provided enough evidence to defeat the Department's summary judgment motion seeking to dismiss his claim the Department violated his Eighth Amendment rights by subjecting him to solitary confinement on death row for thirty-three years.[99] Mr. Porter's cell measured no larger than seven feet by twelve feet with two narrow windows.[100] Mr. Porter spent the majority of those thirty-three years alone in his cell, including eating meals alone, and could only leave for ten hours per week – two hours per day Monday through Friday.[101] He could take three showers per week, exercise in the open air five days per week in an "exercise cage[,]" and have one non-contact personal visit per week along with three telephone calls per week.[102] Mr. Porter could not challenge his placement in solitary confinement or earn any additional privileges.[103] Under the objective prong of the Eighth Amendment analysis, our Court of Appeals recognized Mr. Porter need not provide evidence of an actual injury but only needed to offer evidence of a "substantial risk" of serious harm.[104] Our Court of Appeals concluded a reasonable jury could find thirty-three years in solitary confinement posed a substantial risk of serious harm to Mr. Porter.[105] Mr. Porter also provided evidence he, in fact, experienced severe detrimental

effects from his prolonged solitary confinement.[106]

As for the subjective prong, our Court of Appeals in *Porter* recognized the state actors, including Secretary Wetzel, agreed "long term" solitary confinement of more than thirty years could have harmful effects.[107] Although the state actors argued they had "a legitimate penological justification for keeping [Mr. Porter] in indefinite solitary confinement . . . because capital inmates have nothing left to lose[,]" they offered no evidence about the risk Mr. Porter specifically posed, or any individualized argument at all about Mr. Porter.[108] The parties also did not dispute Mr. Porter had no disciplinary infractions during his lengthy incarceration.[109] Our Court of Appeals held a reasonable jury could indeed find defendants knew prolonged solitary confinement had serious detrimental health impacts, but disregarded the risk by leaving Mr. Porter in isolation for more than thirty-three years offering no legitimate penological justification.[110]

Our Court of Appeals also considered an incarcerated man's Eighth Amendment claim stemming from his placement on the Restricted Release List in *Bracey v. Secretary Pennsylvania Department of Corrections*.[111] The incarcerated man alleged his mental health suffered while on the Restricted Release List because he received inadequate mental health care, and in the winter months his cell became unbearably cold.[112] Our Court of Appeals held the record established the incarcerated man received the psychiatric treatment deemed appropriate for him and "made no showing either of extreme conditions or that the defendants were deliberately indifferent to extreme conditions[.]"[113]

The acting and former Secretaries argue Mr. Batchelor cannot establish a substantial risk of harm as required by the first element, and he cannot establish deliberate indifference as required by the second element.[114]

1.      **Mr. Batchelor does not adduce evidence his confinement created a substantial risk of harm.**

Mr. Batchelor claims during his four years on the Restricted Release list he has been denied access to basic human rights including: sleep, mental health resources, social interaction, environmental stimulation, and exercise.[115] But Mr. Batchelor fails to present evidence showing his placement on the Restricted Release List subjected him to a substantial risk of harm.

Mr. Batchelor's cell is seven by twelve with small windows, his out-of-cell hours are also more severely limited than a general population incarcerated citizen, he eats alone, and is allowed non-contact personal visits similar to the incarcerated man in *Porter*.[116] But this is where the similarities end. Mr. Batchelor has been in the Restricted Release program for four years, compared to thirty-three years Mr. Porter endured. And unlike Mr. Porter, Mr. Batchelor can move through program phases with good behavior to obtain more privileges.[117]

Like the incarcerated man in *Bracey*, who failed to present enough evidence to survive summary judgment on his Eighth Amendment claim alleging his mental health suffered while on the Restricted Release List, Mr. Batchelor has access to mental health resources. Mr. Batchelor is able to meet with psychology staff once a week, his unit manager daily, a Psychologist Services Specialist twice a week, and his counselor once a week.[118] Mr. Batchelor also presents no evidence demonstrating the allegedly cold conditions in his cell or the "artificial lights" were "extreme" to amount to an Eighth Amendment violation.[119] Mr. Batchelor instead testified he does not have any trouble sleeping but the lights, which are on from 6:00 a.m. until 9:00 p.m., interfere with his ability to take naps during the day.[120]

Although Mr. Batchelor claims he lacks social interaction, environmental stimulation, and exercise, the undisputed evidence shows – although his out-of-cell hours are more limited than if he were housed with the general population – he still talks to his siblings on the phone every other

day, exercises two hours per day, makes three phone calls a week, uses tablets and kiosks three times a week, takes four showers a week, and makes one forty-five minute video call a week.[121]

There is no evidence the conditions of Mr. Batchelor's confinement meets the objective prong of the Eighth Amendment test requiring a showing the conditions pose a substantial risk of serious harm.

> **2.     Mr. Batchelor cannot show the acting or former Secretaries acted with deliberate indifference.**

Even if Mr. Batchelor could establish his confinement posed a substantial risk of serious harm, he fails to show Secretaries Wetzel and Little acted with deliberate indifference in placing or keeping him on the Restricted Release List. Criteria for placing an incarcerated citizen on the Restricted Release List includes whether an individual has a history of assaulting staff and inmates and whether the individual poses a threat to the orderly operations of the facility.[122] Former Secretary Wetzel "had a legitimate penological purpose" for placing Mr. Batchelor on the Restricted Release List following his assault of a staff member in March 2018.[123] And Mr. Batchelor remains on the Restricted Release List because of his most recent misconduct in January 2022.[124]

We are faced with facts distinct from *Porter*, where our Court of Appeals held a reasonable jury could find defendants knew prolonged solitary confinement of more than thirty years had serious detrimental health impacts, but disregarded the risk by leaving Mr. Porter's in isolation for more than thirty-three years despite not having any disciplinary infractions during his lengthy sentence.[125] Here, Mr. Batchelor does not present any evidence the acting or former Secretaries knew four years on the Restricted Release list has detrimental health impacts. The record instead shows Secretary Wetzel placed Mr. Batchelor on the Restricted Release List because of Mr. Batchelor's misconduct and he remains on the Restricted Release List because of his continued

misconduct. Mr. Batchelor's most recent annual evaluation in 2022 recognizes his long history of misconduct while at the facility—the most recent of which occurred in January 2022.[126]

We grant summary judgment to the former and acting Secretaries and dismiss Mr. Batchelor's Eighth Amendment claim.

### C.     Mr. Batchelor offers no evidence of a procedural due process claim under the Fourteenth Amendment.

Mr. Batchelor claims he is entitled to "due process in regard to his placement on [the Restricted Release List]."[127] Former Secretary Wetzel and acting Secretary Little argue Mr. Batchelor had "ample due process" with respect to his placement on the Restricted Release List.[128]

"[D]ue process of law" essentially requires the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty, or property.[129] "The core of due process is the right to notice and a meaningful opportunity to be heard."[130] We first must determine whether Mr. Batchelor has a liberty interest protected by the "liberty or property" language of the Fourteenth Amendment.[131] If so, we determine what process is due to protect the interest and whether the acting or former Secretaries violated the process due.[132]

A transfer from one level of custody in a prison to another normally does not impinge a constitutionally protected interest.[133] But a liberty interest can arise when a prison's action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[134]

Our Court of Appeals in *Shoats v. Horn* found long term solitary confinement can impose a "significant hardship on the inmate in relation to the ordinary incidents of prison life."[135] Mr. Shoats had been confined in "virtual isolation for almost eight years." [136] Our Court of Appeals held eight years in administrative custody, with no prospect of immediate release in the near future, is "atypical" and Mr. Shoats had a protected liberty interest adversely affected by his indefinite

segregation.[137] But our Court of Appeals rejected Mr. Shoats's argument he had been deprived of the process due under the Fourteenth Amendment because "the periodic reviews conducted by the [program review committee]" "comport with the minimum constitutional standards for due process."[138] Our Court of Appeals following *Shoats* has held placement on administrative period lasting one year or less does not impose "atypical and significant hardship" on inmates to trigger due process protection.[139]

In *Bowen v. Ryan*, our Court of Appeals held while twenty years in administrative custody is "clearly an atypical and significant hardship sufficient to trigger the procedural protections of the Due Process Clause," the Pennsylvania Department of Corrections satisfied the minimal constitutional standards for due process.[140] The incarcerated man in *Bowen* challenged his placement on the Restricted Release List.[141] Our Court of Appeals rejected the incarcerated man's conclusory allegations his period reviewed were "rote or meaningless" and instead held the incarcerated man had an initial opportunity to be heard upon confinement and period reviews of his status.[142]

We find Mr. Batchelor's four-year placement on the Restricted Release List implicates a liberty interest.[143] But like in *Shoats* and *Bowen*, Mr. Batchelor received the process due. The Program Review Committee interviews Mr. Batchelor at least every ninety days.[144] Mr. Batchelor has also received an annual review every year since being placed on the Restricted Release List.[145] It is unclear if Mr. Batchelor ever met with the Executive Deputy Secretary as a part of the annual review process, but Mr. Batchelor wrote at least two letters to the Secretary and received a written responses from a Staff Assistant.[146]

Mr. Batchelor's procedural due process claim under the Fourteenth Amendment fails because he received adequate due process. We grant summary judgment dismissing Mr.

Batchelor's procedural due process claim.

**D.**   **We need not decide whether the acting or former Secretaries are entitled to qualified immunity.**

Acting Secretary Little and former Secretary Wetzel contend, even if Mr. Batchelor established claims against them, they are entitled to qualified immunity.[147] For acting Secretary Little and former Secretary Wetzel to assert the affirmative defense of qualified immunity they must prove there is not a "clearly established" violated constitutional right."[148] We need not decide whether acting Secretary Little and former Secretary Wetzel are entitled to the defense of qualified immunity because we determined they did not violate a constitutional right.[149]

**IV.**   **Conclusion**

Mr. Batchelor fails to adduce facts enabling him to show the essential elements of his Eighth Amendment and procedural due process claims. We understand Mr. Batchelor is proceeding *pro se*, but he must meet his burden under Federal Rule of Civil Procedure 56. We grant acting Secretary Little and former Secretary Wetzel's Motion for summary judgment.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an Appendix in support of summary judgment. Defendants filed their brief in support of summary judgment, SUMF, and Appendix at ECF Doc. Nos. 39-1, 39, and 40, respectively. Mr. Batchelor did not respond.

[2] ECF Doc. No. 39 ("SUMF") ¶ 1; ECF Doc. No. 10-8 at 8. Mr. Batchelor transferred to SCI Phoenix from a different facility in April 2021. SUMF ¶ 7.

[3] ECF Doc. No. 40-2 at 3.

[4] SUMF ¶¶ 5, 14; ECF Doc. No. 40-2 at 3–6.

[5] ECF Doc. No. 40-8 at 8.

[6] SUMF ¶ 5; ECF Doc. No. 40-3 at 2–5; ECF Doc. No. 40-4 at 2–3.

[7] ECF Doc. No. 40-12 at 11–12.

[8] *Id*. at 11–12.

[9] *Id.*

[10] SUMF ¶ 10.

[11] *Id.* ¶ 11.

[12] *Id.* ¶ 11. Mr. Batchelor must comply with all the rules, attend out of cell group meeting, meet with the psychology staff weekly, and complete in-cell writing packets to advance to phase three. *Id.*

[13] *Id.* ¶ 13.

[14] ECF Doc. No. 1 ¶ 17.

[15] ECF Doc. No. 40-14 at 2–3.

[16] SUMF ¶¶ 16–18; ECF Doc. No. 40-1 at 47–49.

[17] SUMF ¶¶ 17, 23.

[18] ECF Doc. No. 40-14 at 2–3.

[19] SUMF ¶¶ 19–20; ECF Doc. No. 40-1 at 48–50.

[20] *See* ECF Doc. Nos. 40-12, 40-13.

[21] ECF Doc. No. 40-12 at 12. The Secretary of the Department of Corrections is "responsible for the overall management and operation of the [Department of Corrections] in fulfilling its mission of protecting the public by confining persons committed to [their] custody in safe, secure facilities." ECF Doc. No. 40-15 ¶ 2; ECF Doc. No. 40-16 ¶ 2.

[22] ECF Doc. No. 40-12 at 2; ECF Doc. No. 40-15 ¶ 1.

[23] ECF Doc. No. 40-15 ¶ 3.

[24] *Id.* ¶ 4.

[25] ECF Doc. No. 40-16 ¶ 1.

[26] ECF Doc. No. 40-13.

[27] *Id.* at 12.

[28] ECF Doc. No. 40-16 ¶¶ 4–5.

[29] SUMF ¶ 22.

[30] ECF Doc. No. 40-1 at 51–53.

[31] ECF Doc. No. 40-12 at 17; ECF Doc. No. 40-13 at 18.

[32] ECF Doc. No. 40-12 at 17.

[33] ECF Doc. No. 40-13 at 18.

[34] *Id*.

[35] ECF Doc. Nos. 40-5, 40-6, 40-7. Although acting Secretary Little served for a little over year with the 2016 policy still in place (from October 2021 until April 2022), Mr. Bachelor's annual review of his Restricted Release status for 2021 occurred while former Secretary Wetzel still served as Secretary. *See* ECF Doc. No. 40-7.

[36] ECF Doc. No. 40-10 at 10–11.

[37] *Id*.

[38] *Id*.

[39] *Id*. at 8.

[40] *Id*.

[41] *Id*. at 4–6.

[42] *Id*. at 4.

[43] *Id*. at 2.

[44] ECF Doc. No. 40-8 at 2.

[45] *Id*.

[46] *Id*. at 50–56.

[47] *Id*. at 50.

[48] ECF Doc. No. 1.

[49] *Id*. ¶¶ 48–52.

[50] *Id*. ¶¶ 19, 22, 25.

[51] *Id*. ¶¶ 34–35.

[52] *Id*. ¶ 20.

[53] *Id*. ¶¶ 23–25.

[54] *Id*. ¶ 27.

[55] *Id*. ¶ 29.

[56] *Id.* ¶¶ 55–58.

[57] *Id.* ¶¶ 55–58.

[58] ECF Doc. No. 40-2 at 2–38.

[59] *Id.* at 2–38.

[60] *Id.* 36–37.

[61] *Id.* at 38.

[62] SUMF ¶¶ 40–41.

[63] ECF Doc. No. 40-1 at 25–26.

[64] *Id.* Mr. Batchelor explained he had suicidal thoughts as a teenager. *Id.* at 20.

[65] *Id.* at 13–18.

[66] *Id.* at 36–39.

[67] *Id.* at 25–27. Mr. Batchelor explained he had trouble sleeping as a teenager. *Id.* at 19–20.

[68] *Id.* at 29–30.

[69] *Id.* at 63.

[70] ECF Doc. No. 35. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden,

pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[71] ECF Doc. No. 39-1.

[72] ECF Doc. No. 1 ¶ 52.

[73] *Id*. ¶¶ 48, 46.

[74] ECF Doc. No. 39-1 at 2–3.

[75] 42 U.S.C. § 1983.

[76] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[77] *Rode*, 845 F.2d at 1207.

[78] *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020), *cert. denied*, 209 L. Ed. 2d 532 (2021) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)).

[79] *Saisi*, 822 F. App'x at 48 (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010)); *see also Rode*, 845 F.2d at 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").

[80] *Waldron v. Wetzel*, No. 20-0136, 2021 WL 5770222, at *9 (W.D. Pa. Dec. 6, 2021) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

[81] *Ivy v. Wetzal*, No. 1:20-00265, 2021 WL 4479721, at *5 (W.D. Pa. Sept. 30, 2021) (quoting *Santiago,* 629 F.3d at 129 n.5 (cleaned up)).

[82] ECF Doc. No. 40-16 ¶ 1.

[83] ECF Doc. No. 40-15 ¶ 4.

[84] ECF Doc. No. 40-10 at 10–11.

[85] *Id*. at 8.

[86] *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372–73 (3d Cir. 2019)) (cleaned up).

[87] *Mammana*, 934 F.3d at 373 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)).

[88] *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (*Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 227 (3d Cir. 2015)).

[89] *Booze v. Wetzel*, No. 13-2139, 2014 WL 65283, at *11 (M.D. Pa. Jan. 8, 2014), *adhered to on reconsideration*, No. 13-02139, 2014 WL 1515562 (M.D. Pa. Apr. 17, 2014).

[90] *McClure*, 820 F. App'x at 128 (quoting *Mammana*, 934 F.3d at 372); *see also Booze*, 2014 WL 65283, at *11.

[91] *McClure*, 820 F. App'x. at 128.

[92] *Johnson v. Wetzel*, 209 F. Supp. 3d 766, 776 (M.D. Pa. 2016) (internal citations and quotations omitted).

[93] *Mammana*, 934 F.3d at 373.

[94] *Porter*, 974 F.3d at 441 (internal quotations and citations omitted).

[95] *Mammana*, 934 F.3d at 373 (quoting *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005)).

[96] *Id.* (quoting *Farmer*, 511 U.S. at 837).

[97] *Porter,* 974 F.3d at 446 (citing *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018)).

[98] *Id.*

[99] *Id.* at 435–444.

[100] *Id.* at 436.

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.* at 441 (quoting *Mammana*, 934 F.3d at 373).

[105] *Id.* at 443.

[106] *Id.*

[107] *Id.* at 445.

[108] *Id.* 446–47 (cleaned up).

[109] *Id.* at 447.

[110] *Id.* Our Court of Appeals in *Porter* ultimately granted summary judgment to defendants on the ground they were entitled to qualified immunity because Mr. Porter's Eighth Amendment rights had not been clearly established. *Id.* at 450–51.

[111] *Bracey v. Sec'y Pennsylvania Dep't of Corr.*, 686 F. App'x 130, 134 (3d Cir. 2017).

[112] *Id.* at 135–36.

[113] *Id.* at 136.

[114] ECF Doc. No. 39-1 at 3–9.

[115] ECF Doc. No. 1 ¶¶ 19, 22, 25.

[116] *Id*. ¶ 17; ECF Doc. No. 40-14.

[117] SUMF ¶ 11; ECF Doc. No. 40-14.

[118] SUMF ¶ 23.

[119] Mr. Batchelor stated on multiple occasions he had no mental health effects from solitary confinement, stopped taking prescribed medication, and had a history of feigning attempted suicide and other mental health issues for extra privileges. SUMF ¶¶ 27–31, 40–45; ECF Doc. No. 40-1 at 25–26, 36–39.

[120] ECF Doc. No. 40-1 at 25–30.

[121] SUMF ¶¶ 16–18, 23; ECF Doc. No. 40-1 at 47–49; ECF Doc. 40-14 at 2.

[122] ECF Doc. No. 40-12 at 11–12.

[123] *Porter*, 974 F.3d at 446 (citing *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018)).

[124] *Id*. (citing *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2018)).

[125] *Id*. at 447.

[126] ECF Doc. No. 40-8 at 2.

[127] ECF Doc. No. 1 ¶ 56.

[128] ECF Doc. No. 39-1 at 9–13.

[129] *Zappan v. Pennsylvania Bd. of Probation and Parole*, 152 F. App'x 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard.").

[130] *LaChance v. Erickson*, 522 U.S. 262, 266 (1998).

[131] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

[132] *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

[133] *Washington-El v. Beard*, No. 08-1688, 2013 WL 1314528, at *7 (W.D. Pa. Feb. 26, 2013), *report and recommendation adopted,* No. 08-1688, 2013 WL 1314521 (W.D. Pa. Mar. 28, 2013), *aff'd*, 562 F. App'x 61 (3d Cir. 2014) (citing *Wilkinson v. Austin*, 545 U.S. 209, 125 (2005)) (no liberty interest "in avoiding transfer to more adverse conditions of confinement")).

---

[134] *Shoats*, 213 F.3d at 143 (internal quotation omitted).

[135] *Id.* (internal quotation omitted).

[136] *Id.* at 144.

[137] *Id.*

[138] *Id.* at 147.

[139] *See Washington–El v. Diguglielmo*, 419 F. App'x 275, 278, n.2 (3d Cir. 2011) (seventeenth month stay in administrative custody not sufficient to deprive incarcerated man of a protected liberty interest to implicate due process concerns).

[140] *Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir. 2007).

[141] *Id.*

[142] *Id.* at 304–05.

[143] *See Shoats*, 213 F.3d at 143–44 (holding eight years "in administrative custody, with no prospect of immediate release in the near future" implicated a liberty interest). If Mr. Batchelor moves through the rest of the phases in his current program at the fastest possible speed, he would not be moved back to general population for another twenty-seven months. ECF Doc. No. 40–14.

[144] ECF Doc. No. 40-13 at 17.

[145] *Id.* at 18.

[146] ECF Doc. No. 40-10.

[147] ECF Doc. No. 39-1 at 13–15.

[148] *Porter*, 974 F.3d at 449.

[149] "The matter of qualified immunity need not be addressed if the court determines that no underlying constitutional violation occurred." *Steely v. Clemons*, No. 20-03778, 2021 WL 5758946, at *5 (E.D. Pa. Dec. 3, 2021) (citing *Schieber v. City of Philadelphia*, 320 F.3d 409, 423 (3d Cir. 2003)); *Torres v. McLaughlin*, 163 F.3d 169, 174-75 (3d Cir. 1998)); *see also Coleman v. Stanford*, No. 19-696, 2022 WL 606696, at *5, n.4 (D. Del. Feb. 28, 2022), *aff'd*, No. 22-1529, 2022 WL 2802403 (3d Cir. July 18, 2022) ("I will not address the issue of qualified immunity given that summary judgment is appropriate on other grounds."); *Rosado v. Smith*, No. 5:21-CV-00515, 2022 WL 225564, at *4 (E.D. Pa. Jan. 26, 2022) ("Since the Court finds that no reasonable jury could conclude that Defendants used excessive force in connection with [the man's] arrest, the Court need not address the issue of qualified immunity.").